UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED

98 MAR 16 PM 3:07

U.S. DISTRICT COURT
N.D. OF ALABAMA

DONALD E. WILSON, )
)
    Plaintiff, )
)
vs. ) Civil Action No. CV96-S-3267-NE
)
TOGO D. WEST, SECRETARY OF THE )
ARMY, )
) ENTERED
    Defendant. )
MAR 1 6 1998

### MEMORANDUM OPINION

Donald E. Wilson, who represents himself, *pro se*, seeks damages for alleged discrimination and retaliation by defendant in violation of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 *et seq*. He also claims damages for the negligent or intentional failure of certain administrative officers to determine that he was discriminated against.

The action presently is before the court on defendant's motion for summary judgment. Upon consideration of the pleadings, briefs, and evidentiary submissions, this court concludes the motion is due to be granted in part and denied in part.

### I. FACTS

#### A. Disability Discrimination

Plaintiff suffers from an "unstable left knee" and degenerative arthritis in his lower back. (Defendant's exhibit 2 at 2.) Those conditions cause pain and limping, but plaintiff can

33

work "without ... special consideration." (Plaintiff's deposition at 18, 23.)

Plaintiff was hired as a civilian employee in the Provost Marshal's Office located on the United States Army's Redstone Arsenal, near Huntsville, Alabama on April 24, 1984. (Defendant's exhibit 4; defendant's exhibit 1 at 7.) He initially held the position of "GS-1811-05" Criminal Investigator, but received a promotion to the job grade of "GS-1811-07" on May 5, 1985. (Defendant's exhibit 5.)

In February of 1992, plaintiff was one of two persons who applied for the position of Supervisory Police Officer in the Provost Marshal's office. (Defendant's exhibit 3 at 2.)   Both applications were referred to Marion Ray Clift, Acting Chief of the Law Enforcement Branch in the Provost Marshal's Office, on February 19, 1992.   (Id.)   Clift reviewed the applications and concluded neither candidate possessed the knowledge, skills, and abilities required for the position. He wrote the following statement on the referral list: "No selection made because of knowledge, skills, ability, and physical agility requirements.   Request OPM listing." (Id.)

Mary Beadenkopf, a staffing assistant in the civilian personnel office at Redstone Arsenal, instructed Mr. Clift that his written statement was unacceptable, because the office of occupational health made determinations on the physical abilities

2

of candidates to perform particular jobs. (*Id.*) Thus, the same two applications were returned to Clift on March 17, 1992. (*Id.*) Clift again rejected both applications, writing the following statement on the referral list: "List returned unused due to insufficient number of qualified candidates. Request OPM certificate." Nothing occurred thereafter, however, because a hiring freeze was imposed by the Department of the Army before the Office of Personnel Management (OPM) could provide Clift another list of candidates. (*Id.*)

Plaintiff filed an administrative complaint of discrimination with the Department of the Army's equal employment opportunity office on June 29, 1992. He claimed Clift labeled him "physically unqualified for the position ... in order to place other preselected individuals into the zone of qualification for the job." (Defendant's exhibit 16 at 1.) The United States Army Civilian Appellate Review Agency determined on December 23, 1992, that plaintiff had not established a *prima facie* case of discrimination. (Defendant's exhibit 3 at 3.) The Department of the Army's Equal Employment Opportunity Compliance and Complaints Review Agency issued a final decision on October 13, 1993, finding no discrimination. (Defendant's exhibit 15.)

Plaintiff appealed to the Equal Employment Opportunity Commission, which initially upheld the Army's decision on December 14, 1994, finding plaintiff was not a "qualified individual with a

3

disability." (Defendant's exhibit 17.) Plaintiff filed a motion for reconsideration with the EEOC on January 18, 1995.[1] Upon reconsideration on September 26, 1996, the EEOC found that plaintiff was "regarded as" disabled by defendant. (Defendant's exhibit 2 at 5.) The EEOC ordered defendant to administer drug and physical agility tests required for the position, to determine whether defendant "would have offered [plaintiff] the position conditioned on successful completion of the tests and whether it would have honored its offer despite the hiring freeze." (*Id.* at 8.)

Plaintiff refused to take the physical agility test until after receiving the position. Defendant sought guidance from the EEOC on December 2, 1996, to resolve the conflict between the EEOC's order to administer the physical agility test and defendant's policy to administer such tests up to 179 days after appointment. (Defendant's exhibit 19.) The EEOC did not issue a response until after plaintiff commenced the present action on December 17, 1996.[2]

---

[1]The court notes that plaintiff's motion for reconsideration was untimely (29 C.F.R. § 1614.407(b)), but the EEOC apparently accepted the matter for reconsideration on its own motion. 29 C.F.R. § 1614.407(a). Thus, the December 14, 1994 decision was not a "final" decision of the EEOC (29 C.F.R. § 1614.405(b)(2)), and plaintiff's statute of limitations for filing suit did not commence at that time. *See* 29 C.F.R. § 1614.408.

[2]Defendant contends that the filing of plaintiff's complaint terminated the administrative process, and relies upon 29 C.F.R. § 1614.107, which provides:

The agency shall dismiss a complaint or a portion of a complaint:
. . .
(c) That is the basis of a pending civil action in a United States District Court in which the complainant is a party provided that at least 180 days have passed since the filing of the administrative complaint, or that was the basis of a civil action

4

**B.    Retaliation Claims**

    **1.    Increasing grade requirements for police supervisor position**

A Position Vacancy Announcement for the supervisory police officer position was posted on November 13, 1993. (Defendant's exhibit 25 at 2.)    The job grade requirement listed in that announcement was "GS-08."  The previous announcements, under which Wilson was rejected, only required a job grade of "GS-07."  (*Id.*) Wilson was aware of the newly-posted vacancy announcement, but did not apply, because of the job grade requirement.    (*Id.*)    The vacancy announcement was amended on December 10, 1993, to reflect the correct job grade of "GS-07."  (*Id.*)  Plaintiff become aware of that amendment in December of 1993, but he could not prepare the requisite paperwork before the application period expired.  (*Id.*) Thereafter, another candidate, Randy McClure, was selected for the supervisory police officer position.

Plaintiff filed a second complaint of discrimination with the Army's equal employment opportunity office on June 22, 1994, asserting: (1) a non-disabled individual was selected for the supervisory police officer position; and, (2) the grade requirements for the police supervisor position were increased to exclude him from contention, in retaliation for his prior charge of discrimination.    (Defendant's exhibit 21.)

---

    decided by a United States District Court in which the complainant was a party;

5

The Department of the Army's Equal Employment Opportunity Office initially determined on July 12, 1995 that plaintiff's retaliation claim was untimely (defendant's exhibit 46), and plaintiff's case became consumed by the administrative appeals process until September 29, 1995. On that date, the Department of the Army Equal Employment Opportunity office rescinded its earlier decision and accepted both of plaintiff's charges for investigation.  (Defendant's exhibit 24.)

No decision was rendered for more than fourteen months; therefore, plaintiff filed the present action on December 17, 1996. Consequently, the Department of the Army Equal Employment Opportunity Office issued a final decision on January 8, 1997, dismissing plaintiff's administrative complaint in accordance with federal regulations.[3]  (Defendant's exhibit 26.)

### 2.   Removal from temporary promotion

Plaintiff was transferred from the Provost Marshal's Office to the Directorate of Public Works at Redstone Arsenal on October 3, 1993, where he assumed the position of "GS-0303-07" Work Request Assistant.  (Defendant's exhibit 6.)  Eight months later, on July 10, 1994, plaintiff received a temporary promotion and transfer to the job grade and position of "GS-1811-09" Criminal Investigator in the Provost Marshal's office.   (Defendant's exhibit 7.)   With plaintiff's transfer and promotion, the Provost Marshal's office employed four criminal investigators.

---

[3]See note 2 supra.

6

The initial duration of plaintiff's promotion was "not to exceed" July 9, 1995. (*Id.*) Even so, he received an extension on July 10, 1995 for a duration "not to exceed" July 9, 1996. (Defendant's exhibit 9.)  On November 12, 1995 plaintiff's temporary promotion was terminated, and he returned to his position as work request assistant in the Directorate of Public Works. (Defendant's exhibit 11.)  Since that time, the Provost Marshal's office only has employed three criminal investigators.

Plaintiff's temporary promotion and termination were the result of a complex administrative process, as reflected in a report of investigation prepared by the Department of Defense, Civilian Personnel Management Service, Office of Complaint Investigations:

### Part II — BACKGROUND

A.  In March 1994, Mr. Bobby Blackwell was given a temporary promotion not to exceed January 1995 from a Criminal Investigator, GS-11 position to a Supervisory Criminal Investigator, GS-12 position (Chief of Investigations Section).  At the time of that promotion, the Investigations Section was composed of three GS-11 Criminal Investigators and one GS-09 Criminal Investigator.  Mr. Blackwell was one of three GS-11 Investigators, and Mr. Dale Markin was the GS-09 Investigator.   In May 1994, Mr. Markin was given a temporary promotion not to exceed April 1995 to the GS-11 Investigator position vacated by Mr. Blackwell.  In July 1994, [plaintiff] was selected for a temporary promotion not to exceed July 1995 from a Work Request Assistant, GS-303-07 position in the Public Works Department into the GS-09 Criminal Investigator position vacated by Mr. Markin.

B.  In October 1994, Mr. Blackwell's GS-12 promotion was made permanent.  However, Mr. Markin continued working in

7

the position vacated by Mr. Blackwell on his temporary
GS-11 promotion and that temporary promotion was even
extended for one year in May 1995. The [plaintiff] also
continued working on his temporary promotion to the GS-09
position vacated by Mr. Markin, and in July 1995, that
temporary promotion was extended for one year. ... Then
on 11 November 1995, Mr. Markin's temporary promotion was
made permanent and the [plaintiff's] temporary promotion
to the GS-09 position was canceled. The [plaintiff]
alleged that he was removed from that temporary promotion
as an act of reprisal.

. . .

## Part III — ANALYSIS

. . .

B. [Clift] testified that the [plaintiff] was temporarily
promoted into the position vacated by Mr. Markin while
Mr. Markin was temporarily promoted into the position
vacated by Mr. Blackwell. Then, when Mr. Blackwell's
temporary position was made permanent, Mr. Blackwell's
GS-11 Criminal Investigator position was abolished.
Allegedly, the abolishment of the GS-11 position caused
Mr. Markin to return to his former GS-09 position, which
resulted in the [plaintiff's] temporary promotion being
canceled .... [Clift] testified that subsequently,
through a desk audit or some other noncompetitive
mechanism, Mr. Markin was promoted from his GS-09
Criminal Investigator position into a GS-11 Criminal
Investigator position. ...

(Defendant's exhibit 35 at 2-3.)

Plaintiff filed a third administrative complaint on April 11,
1996, alleging he was removed from his temporary position as
criminal investigator in retaliation for filing his first
administrative complaint. (Defendant's exhibit 27.) The
Department of Defense Civilian Personnel Management Service, Office
of Complaint Investigations, recommended a finding of no
discrimination on October 31, 1996. (Defendant's exhibit 35 at 3-

8

4.)   That was the last administrative action before this action was commenced on December 17, 1996.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ..."  Rule 56(c), *Fed.R.Civ.P.* (emphasis added).  The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).  The moving party discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-moving party's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995)(*per curiam*).  Rule 56 permits the movant to discharge this burden with or without supporting affidavits.  *Celotex*, 477 U.S. at 324, 106 S.Ct. 2553.  When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Jeffery*, 64 F.3d at 593.

9

In deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury

10

or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. 2512.

## III. DISCUSSION

### A. Negligent or Willful Actions of Army Administrative Personnel

Inexplicably, defendant fails to move for summary judgment on plaintiff's most bizarre claim. Wilson alleges malfeasance by officials of the United States Army Civilian Appellate Review Agency, and the Department of the Army Equal Employment Opportunity Compliance and Complaints Review Agency. (Complaint at 6.) Those officials found no discrimination in the failure to award Wilson the supervisory police officer position. Thus, Wilson claims that:

The collective repudiation of their professional responsibility through willful negligence, both made possible, and encouraged management to continue their persecution of the plaintiff [in retaliation for his complaints of discrimination].

(*Id.* at 7.) Defendant makes absolutely no reference to that claim in the motion for summary judgment. That silence is typical of the shoddy manner in which defendant has sought summary judgment. Defendant's brief is a rambling litany of frequently irrelevant arguments which clearly are the result of "cutting and pasting" from other briefs.[4]

---

[4]At one point, defendant is careful to inform this court that "[i]nsofar as plaintiff attempts to sue the defendant Postal Service on any jurisdictional basis, or to state any claim on any basis other than Sec. 717 [of Title VII], those assertions must be dismissed." (Defendant's brief at 19 n.1 (emphasis supplied).) This court's extensive review of the record does not reveal that Wilson ever worked for the United States Postal Service, or that he asserts any claims against it.

11

Nevertheless, this court finds the claim is due to be dismissed. Under the doctrine of sovereign immunity "[t]he United States cannot be sued except as it consents to be sued." *Powers v. United States*, 996 F.2d 1121, 1124 (11th Cir. 1993)(citing *Dalehite v. United States*, 346 U.S. 15, 30, 73 S.Ct. 956, 965, 97 L.Ed. 1427 (1953)). Even so, the Federal Tort Claims Act waives the sovereign immunity of the United States

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). Wilson seeks to recover for the negligent or wrongful acts of the Army's administrative personnel; therefore, his claim only may be pursued under the Federal Tort Claims Act.

There are two reasons to dismiss that claim. First, Wilson has sued the Secretary of the Army, rather than the United States. It is well established that "an FTCA claim against a federal agency or employee as opposed to the United States itself must be dismissed for want of jurisdiction." *Galvin v. Occupational Safety & Health Administration*, 860 F.2d at 183 (5th Cir. 1988); *see also Carr v. Veterans Administration*, 522 F.2d 1355, 1356 (5th Cir. 1975)("sad but simple" case where plaintiff failed to name the United States).[5]

---

[5]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

12

Second, even if Wilson correctly sued the United States, he has not plead, or provided this court with any evidence, that he filed an administrative claim. The Supreme Court of the United States holds that a district court does not have jurisdiction to consider tort claims against the United States unless the plaintiff has first filed an administrative claim with the concerned agency pursuant to 28 U.S.C. § 2675(a) of the Act, and, that claim has been finally denied or deemed denied by operation of law.[6] *McNeil v. United States*, 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993); *see also Lykins v. Pointer, Inc.*, 725 F.2d 645, 646-47 (11th Cir. 1984).

The requirement of filing an administrative claim is a jurisdictional prerequisite to suit and cannot be waived. *Brown v. United States*, 838 F.2d 1157, 1163 (11th Cir. 1988); *Gregory v. Mitchell*, 634 F.2d 199, 203-04 (5th Cir. 1981). Plaintiff has doggedly pursued his employment discrimination claims through the appropriate administrative channels. Even so, there is no indication that he filed an administrative complaint with the

---

[6]28 U.S.C. § 2675(a) provides in pertinent part:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

13

Department of the Army regarding the alleged negligent or willful failure of its employees to find that he suffered discrimination. Accordingly, that claim is due to be dismissed.

**B. Plaintiff's Discrimination Claims Arise Under the Rehabilitation Act of 1973**

The jurisdictional basis for plaintiff's discrimination claims is not entirely clear. At various points, his *pro se* complaint invokes 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e *et seq.,* and the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 *et seq.*

42 U.S.C. § 1983 "has no application to the federal government or its officers." *Mays v. United States Postal Service*, 928 F. Supp. 1552, 1557 n.4 (M.D. Ala. 1996). That statute only provides redress for actions of state or local officials "acting under color of state law." Accordingly, to the extent plaintiff alleges a claim based upon § 1983, it must be dismissed.[7]

Moreover, "§ 717 of the Civil Rights Act of 1964, as amended, provides the exclusive judicial remedy for claims of discrimination in federal employment." *Brown v. General Services Administration*, 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976).

---

[7]Plaintiff does not assert a *Bivens*-type claim for constitutional violations. If he did, that claim would be dismissed, because such constitutional claims are pre-empted when Congress provides a comprehensive remedial scheme to combat discrimination by the government. See Paterson v. Weinberger, 644 F.2d 521 (5th Cir. 1981)(Fifth amendment claims dismissed because ADEA provided exclusive remedy for age discrimination); Taylor v. Gearan, 979 F.Supp. 1 (D.D.C. 1997)(No *Bivens* Action for disability discrimination, because Rehabilitation Act provided exclusive remedy against government discrimination).

14

This court has carefully reviewed all pleadings and materials submitted by plaintiff, and finds no evidence that he was discriminated against on the basis of his "race, color, religion, sex, or national origin." *See* 42 U.S.C. § 2000e-2(a)(1). Thus, to the extent plaintiff attempts to state a claim based upon Title VII of the Civil Rights Act of 1964, it also is due to be dismissed.

This court concludes that plaintiff's discrimination and retaliation claims are premised upon violations of § 501 of the Rehabilitation Act of 1973.[8]

## C. Rehabilitation Act Analysis

Section 501 of the Rehabilitation Act of 1973 "prohibits discrimination on the basis of disability in employment decisions by the Federal Government." *Lane v. Pena*, 518 U.S. 187, ___, 116 S.Ct. 2092, 2097, 135 L.Ed.2d 486 (1996). That section provides:

> The standards used to determine whether this section has been violated in a complaint alleging nonaffirmative action employment discrimination under this section shall be the standards applied under Title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201-12204 and 12210), as such sections relate to employment.

---

[8]"Plaintiff alleges that Clift, in denying him the promotion in question, violated Section 501 of the Rehabilitation Act of 1973, as amended. 29 U.S.C. §791." (Plaintiff's brief at 3.) Plaintiff does not specify that his retaliation claims arise under § 501, and it is possible to assert such claims under § 504 of the Rehabilitation Act. Even so, he seeks to recover monetary damages for his retaliation claims. Monetary damages are not recoverable from a federal agency under § 504. *Lane v. Pena*, 518 U.S. 187, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996). Therefore, this court finds that plaintiff's retaliation claims also arise under § 501.

15

29 U.S.C. § 791(g). In turn, the Americans with Disabilities Act of 1990 commands:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

Thus, Wilson bears the burden of proving by a preponderance of the evidence that defendant intentionally discriminated against him because of his disability. That can be done either by direct or circumstantial evidence. When, as here, the evidence of intent is circumstantial in nature, the Supreme Court has prescribed an analytical process to evaluate the strength of plaintiff's proof. In three decisions rendered over two decades, the Supreme Court "developed a formula for shifting evidentiary burdens between plaintiff and defendant which permits the establishment of intentional discrimination without direct evidence of unlawful motivation." A.C. Modjeska, *Employment Discrimination Law* § 1:09, at 39-40 (3d ed. 1996). The order and allocation of burdens of proof, persuasion, and production were first defined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), then elaborated in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981), and finally elucidated in *St. Mary's Honor Center v.*

16

*Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).[9] The analytical structure developed by that trilogy has three steps, the ultimate goal of which is that of "progressively ... sharpen[ing] the inquiry into the elusive factual question of intentional discrimination." *St. Mary's Honor Center,* 509 U.S. at 506, 113 S.Ct. at 2746 (quoting *Burdine,* 450 U.S. at 255 n.8, 101 S.Ct. at 1094 n.8).

The first step is satisfied when the plaintiff establishes a *prima facie* case. To establish a *prima facie* case of discrimination under the Rehabilitation Act, plaintiff must show he: (1) suffers from a "disability" within the meaning of the Act and relevant regulations, (2) is "otherwise qualified" for the position in question, (3) worked for a Program or activity that received federal financial assistance; and (4) was adversely treated solely because of his handicap. *See Jackson v. Veterans Administration,* 22 F.3d 277, 278 (11th Cir. 1994).

At the second stage of analysis, the burden of production shifts to defendant to rebut the presumption of intentional discrimination thus raised by a *prima facie* case, by articulating

---

[9]Although the Eleventh Circuit has not explicitly held to the following effect, it nevertheless is widely agreed that the burden-shifting analysis expressed in *McDonnell Douglas* and its progeny, and applied in Title VII disparate treatment cases, is similarly followed in deciding cases brought under the Rehabilitation Act. *See* Ennis v. National Association of Business & Education Radio, Inc., 53 F.3d 55, 57-58 (4th Cir.1995); Tyler v. Runyon, 70 F.3d 458, 466 (7th Cir.1995); Pushkin v. Regents of the University of Colorado, 658 F.2d 1372 (10th Cir.1981); Malladi v. Brown, No. Civ. A. 96-T-431-E, 1997 WL 748200 (M.D.Ala. Dec. 1, 1997).

17

legitimate, nondiscriminatory reasons for the contested employment action. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. If defendant does so, then in the final step of the inquiry plaintiff must show by a preponderance of the evidence that defendant's stated reasons are mere pretexts for unlawful, discriminatory motives. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

**D.   Disability Discrimination**

   **1.   Does plaintiff suffer from a "disability."**

Section 501 of the Rehabilitation Act, through the Americans with Disabilities Act, defines the concept of "disability" in a manner that includes any individual:

   (A)   who has a *physical or mental impairment* that *substantially limits* one or more of the *major life activities* of such individual; or

   (B)   who has a *record of* such an impairment; or

   (C)   who is *regarded as having* such an impairment.

*See* 42 U.S.C. § 12102(2). Plaintiff alleges he possessed a "record of" a disability, or alternatively that he was "regarded as" disabled. (Complaint at 2.)

   **a.   "Record of" a disability**

Defendant first contends that Wilson does not possess a "record of" an impairment which "substantially limits' a major life activity." The United States Department of Labor regulations implementing the Rehabilitation Act provide:

   (1) The term substantially limits means:

**18**

> (i) Unable to perform a major life activity
> that the average person in the general
> population can perform;
>
> (ii) Significantly restricted as to the
> condition, manner or duration under which an
> individual can perform a particular major life
> activity as compared to the condition, manner,
> or duration under which the average person in
> the general population can perform that same
> major life activity.

41 C.F.R. § 60-741.2(q)(footnote omitted).

Plaintiff presents no evidence of a substantial limitation on a major life activity: *i.e.* "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* § 60-741.2(p). In fact, plaintiff's only evidence of a record of disability is a decision of the Board of Veterans Appeals assigning a disability rating of 20% to his left knee, and 10% to his lumbar spine. (Plaintiff's exhibit 5.) That decision does not discuss any "major life activity," and does not contrast plaintiff to "the average person in the general population." Thus, this court finds no "record of" a disability.

### b. Was plaintiff "regarded as" disabled?

Wilson relies completely upon the findings of the EEOC to argue that he was "regarded as" disabled. (Plaintiff's brief at 2, 7.) In its September 26, 1996 reconsideration of plaintiff's claims, the EEOC found:

> we agree, that the agency, at least in this instance,
> <u>regarded</u> him as disabled. Specifically, we agree with
> the agency's finding in its final decision that [Clift's]
> notation on RSR-1 constitutes evidence of his belief that

19

> appellant could not perform the duties of the Supervisory
> Police Officer position for reasons relating to, among
> others, his physical condition. Although [Clift]
> testified at the fact finding hearing that he did not
> perceive appellant as disabled, we further agree with the
> agency, which found [Clift's] testimony self-serving and
> insufficient to overcome the contrary documentary
> evidence.

(Plaintiff's brief appendix C at 5.) Thus the sole admissible

evidence that defendant "regarded" Wilson as disabled is Clift's

written statement rejecting Wilson (and the other applicant), in

part, because of "physical agility requirements."[10]

That single statement does not implicate a substantial

limitation of any major life activity. Arguably, it is evidence

that Clift regarded Wilson as limited in the ability to work in the

position of supervisory police officer.

> (3) With respect to the major life activity of working
> —
> (i) The term substantially limits means
> significantly restricted in the ability to
> perform either a class of jobs or a broad
> range of jobs in various classes as compared
> to the average person having comparable
> training, skills, and abilities. The
> inability to perform a single, particular job
> does not constitute a substantial limitation
> in the major life activity of working.

41 C.F.R. § 60-741.2(3)(emphasis supplied). Even construed in a

light most favorable to Wilson, Clift's written statement only

---

[10]The Department of the Army's findings make reference to Wilson's
"unrebutted testimony" that "he was told by Mr. Blackwell, Chief of
Investigation, Provost Marshal Office, that [Clift] had stated to Mr. Blackwell
that complainant would have a problem with his leg and that there would have to
be an agility test." (Plaintiff's brief appendix A at 3.) That quadruple
hearsay is inadmissible. Moreover, plaintiff submits his own affidavit and an
affidavit from Blackwell in opposition to summary judgment. (Plaintiff's
exhibits 3, 12.) Neither affidavit refers to Clift's alleged statement.

demonstrates that he "regarded" Wilson as unable to perform the "single, particular job" of supervisory police officer.

There is no evidence that Clift "regarded" Wilson as unable "to perform either a class of jobs or a broad range of jobs in various classes." In fact, defendant clearly believed Wilson could work in the field of law enforcement, because Wilson worked in the Provost Marshal's office, both before and after Clift's alleged statement.

Accordingly, this court finds that plaintiff has failed to present evidence that he was "regarded as" suffering from an impairment which substantially limited a major life activity. Plaintiff has failed to demonstrate he suffers from a disability, and summary judgment accordingly is appropriate on his failure to promote claim.

**E.   Plaintiff's Two Retaliation Claims**

**1.   Change of job grade requirements**

The familiar burden-shifting scheme developed by the Supreme Court for disparate treatment claims applies equally well to retaliation claims. *See Donnellon v. Fruehauf Corporation*, 794 F.2d 598, 600, *reh'g denied*, 800 F.2d 267 (11th Cir. 1986)(Title VII case). Thus, Wilson must first establish a *prima facie* case by demonstrating: "(1) a statutorily protected activity; (2) an adverse employment action; and (3) a causal link between the

21

protected expression and the adverse action." *Raney v. Vinson Guard Service, Inc.*, 120 F.3d 1192, 1196 (11th Cir. 1997).

Wilson claims that defendant "caused the civil service grade to qualify for the position [he desired], to be raised one grade, in order to exclude the complainant from again applying, or qualifying for it." (Complaint at 3.) Even so, Wilson cannot demonstrate a causal connection between his complaints of discrimination and the increase in grade requirement.

Wilson seeks to hold the Secretary of the Army liable for the acts of his agents; therefore, he must demonstrate that the agent who made the decision to change the grade level requirement was aware of his discrimination complaints. *See Raney*, 120 F.3d at 1197 (in cases involving a corporate defendant, plaintiff must show that the agent who took the adverse action was aware of the plaintiff's protected expression).

Wilson presents this court with no evidence identifying the agent responsible for changing the job grade requirement. Defendant identifies classification specialist Dollie Waters, but Waters only testified that she was responsible for handwriting the job vacancy announcement. (Defendant's exhibit 47 at 28, 32-33.) An unidentified clerk was responsible for producing a typewritten announcement and publicizing it at Redstone Arsenal. (*Id.* at 32-33.)

22

Wilson presents this court with no admissible evidence that Waters or the unidentified clerk knew of his claims of discrimination. Instead, his claim is based upon "suspicions" that Clift influenced Dollie Waters (*id.* at 17), and a double hearsay statement indicating that Clift exerted influence over the change in job grade. Wilson testified that he spoke with Randy McClure, the person eventually awarded the supervisory police officer position. (*Id.*) McClure allegedly spoke with Dollie Waters, who allegedly told McClure that Clift dictated the job grade requirement. (Defendant's exhibit at 17-22.)

Defendant relies upon the testimony of Ray Clift and Dollie Waters to rebut Wilson's suspicions and double hearsay. Clift denied any authority to establish the "time in grade requirement" for the position which Wilson sought, and he denied discussing the requirement with Ms. Waters. (Defendant's exhibit 47 at 80-81.) Ms. Waters did not recall any conversations with Clift. (*Id.* at 36-37.)

This court finds no evidence that the person responsible for the change in job grade requirement knew of Wilson's protected activity. Thus, Wilson cannot establish a *prima facie* case of retaliation, and summary judgment is appropriate on that claim.

### 2. Termination of plaintiff's temporary promotion

Wilson's final claim is that defendant retaliated against him by terminating his temporary promotion to the position of criminal

23

investigator. Defendant claims there is no causal relation between

Wilson's complaints of discrimination and the decision to terminate

his temporary promotion:

> The documents governing the termination of the position,
> however, indicate that Mr. Blackwell took the action.
> **DEX 12 and DEX 34.** Furthermore, the action that
> eventually led to the termination of Plaintiff's
> position, was justified by an outside source; namely the
> Classification Specialist who determined that Dale
> Markin's position needed to be upgraded. **DEX 28.**
> Plaintiff makes no claim that either Mr. Blackwell or the
> Classification Specialist took adverse action against
> Plaintiff in reprisal for prior protected activity.

(Defendant's brief at 33 (emphasis in original).) In response to

those assertions, plaintiff presents the affidavit of Bobby J.

Blackwell:

> 6. Shortly before Don Wilson was removed from his
> position, I went to the Redstone Arsenal office and
> talked with Karen Profozich [the classification
> specialist] about upgrading the GS-9 position in my
> office. I went there on the instructions of Ray Clift.
> As his subordinate, I had no choice but to comply. I had
> no prior knowledge that this was going to happen, had
> personally done nothing to initiate it and had never
> myself discussed anything like it with anyone. Mr. Clift
> had not informed me that he had gone to the personnel
> office about it either. He just instructed me to go
> there and upgrade it.

(Plaintiff's exhibit 3 at 2.) That affidavit contradicts

defendant's argument, and suggests that Clift was directly

responsible for the change in classification that led to

termination of plaintiff's temporary promotion. This court thus

finds sufficient evidence to establish a causal link between

plaintiff's protected activities and adverse employment action.

24

retain four criminal investigators. (Plaintiff's exhibit 10 at 2.)

Blackwell provided the following affidavit testimony:

> 4.   In responding to several comments from my immediate supervisor, Ray Clift, I submitted what I felt were valid justifications for the positions that were being manned in my office but Mr. Clift would not accept them, stating they were inadequate.  At the time I was instructed to take action in November, 1995, that resulted in the removal of Don Wilson, I felt that the number of investigator positions being manned were justified for the reasons I had stated in the documents I had submitted.  Mr. Clift initially began questioning the number of positions about January 1995.   At that time, to the best of my knowledge, there were at least four GS-11 Criminal Investigators positions in my office, although we only had three GS-11's positions being manned.

(Plaintiff's exhibit 3 at 2.)   That affidavit is consistent with testimony that Blackwell submitted a number of memoranda with statistical data justifying retention of four investigators. (Defendant's exhibit 48 at 51, 52, 54.)

Defendant also claims there was a legitimate, nondiscriminatory reason behind the decision to terminate plaintiff's temporary promotion: there was not enough work in the Provost Marshal's office to justify four investigators. Defendant offers nothing more than Ray Clift's subjective beliefs in support of that stated reason, however. (Defendant's exhibit 48 at 23-30.)

In response, plaintiff relies upon a "Redstone Arsenal Support Activity (RASA) Manpower Management Review," and the affidavit testimony of Bobby J. Blackwell. The manpower review assessed the law enforcement branch of the Provost Marshal's office from October 1, 1993 to September 30, 1994, and recommended that the office retain four criminal investigators. (Plaintiff's exhibit 18 at 2.) Blackwell provided the following affidavit testimony:

> 4. In responding to several comments from my immediate supervisor, Ray Clift, I submitted what I felt were valid justifications for the positions that were being manned in my office but Mr. Clift would not accept them, stating they were inadequate. At the time I was instructed to take action in November, 1995, that resulted in the removal of Don Wilson, I felt that the number of investigator positions being manned were justified for the reasons I had stated in the documents I had submitted. Mr. Clift initially began questioning the number of positions about January 1995. At that time, to the best of my knowledge, there were at least four GS-11 Criminal Investigators positions in my office, although we only had three GS-11's positions being manned.

(Plaintiff's exhibit 3 at 2.) That affidavit is consistent with testimony that Blackwell submitted a number of memoranda with statistical data justifying retention of four investigators. (Defendant's exhibit 48 at 51, 52, 54.)

25

Blackwell's testimony and the "manpower management review" provide sufficient evidence "to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). Thus, summary judgment is inappropriate on plaintiff's second retaliation claim.

### IV. OTHER ISSUES RAISED IN DEFENDANT'S BRIEF

Defendant also argues that Wilson is "not entitled to" punitive damages, attorney's fees or a jury trial, as requested in his complaint. (Defendant's brief at 21.) Those arguments are properly raised in a motion to strike, but the court nevertheless proceeds to consider them.

### A. Punitive Damages

Plaintiff may not recover punitive damages against the Secretary of the Army. 42 U.S.C. § 1981a(b)(1)(punitive damages not recoverable against "a government, government agency or political subdivision").

### B. Attorney's Fees

Plaintiff is not entitled to attorney's fees, because he represents himself, *pro se*. *See Kay v. Ehrler*, 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991). In *Kay*, the Supreme Court recognized that Congress passed 42 U.S.C. § 1988 to "enable potential plaintiffs to obtain assistance of competent counsel ...." *Id.* at 435-36, 111 S.Ct. at 1437. "Permitting a fee award

26

to a *pro se* litigant — even one who is a lawyer — would discourage such a plaintiff from employing independent counsel; so, the Court held no fees could be awarded." *Ray v. U.S. Department of Justice*, 87 F.3d 1250, 1251 (11th Cir. 1996). This court can fathom no argument suggesting that the intent of the attorney's fee provision in the Rehabilitation Act (29 U.S.C. § 794a(b)) is different from that of 42 U.S.C. § 1988. *See Ray*, 87 F.3d at 1251-52 (discussing other statutes under which *pro se* plaintiffs have been denied attorney's fees).

**C.   Jury Trial**

Defendant argues that plaintiff is not entitled to a jury trial, but provides sparse supporting authority:

> Plaintiff [sic] only entitled to compensatory damages and a jury if Army failed to properly accommodate. Here, by plaintiff's and Army's own admission, no accommodation was necessary. So plaintiff [sic] not entitled to a jury. Under 102 of the 1991 Act, where the Plaintiff seeks compensatory damages, either party may demand a trial by jury and the court shall not inform the jury of the damage limitation. However, jury trials and compensatory damages are not available in ADEA actions, or in Rehabilitation Act cases, like the case at bar, where the em[ployer [sic] can demonstrate good faith efforts in consultation with the employee to identify and make a reasonable accommodation. 42 U.S.C. 1981a.

(Defendant's brief at 21-22 (emphasis in original).) Defendant supplies no valid authority to support the argument that jury trials are only available for claims of failure to accommodate. In fact, the availability of a jury trial is better summarized as follows:

27

28

For actions brought under Title I of the ADA or under Section 501 of the Rehabilitation Act of 1973, the availability of a jury trial is determined by reference to 42 U.S.C. Section 1981a(c)², as added by the Civil Rights Act of 1991. That section permits a party to demand a trial by jury in any case where the plaintiff is seeking compensatory or punitive damages within the terms of the Act. A jury trial is thus available in Title I and Section 501 cases where the defendant is alleged to have engaged in intentional unlawful discrimination, except that a plaintiff may not recover compensatory or punitive damages in situations where the defendant's alleged unlawful discriminatory action involves failure to make a reasonable accommodation if the defendant is able to demonstrate that it made good faith efforts to provide a reasonable accommodation.

Robert L. Burgdorf, Jr., *Disability Discrimination in Employment Law*, 578-79 (1995)(citations omitted). Plaintiff seeks compensatory damages for the alleged retaliation, and he is entitled to a jury trial.

## V. CONCLUSION

For the foregoing reasons, this court concludes defendant's motion for summary judgment is due to be granted in part, but denied in part. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

**DONE** this the $\frac{16}{}$ day of March, 1998.



United States District Judge